**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 18-cv-02023-MSK-NYW

BLAINE HARRINGTON, III,

      Plaintiff,

v.

AEROGELIC BALLOONING, LLC,
SHANE CORY,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

Magistrate Judge Nina Y. Wang

This action comes before this court for recommendation on the following three issues:

(1)      The amount of statutory damages to be awarded to Plaintiff pursuant to the Order

dated January 4, 2019, [#27], entered by the presiding judge, the Honorable Marcia

S. Krieger;

(2)      Plaintiff's Motion for Rule 11 Sanctions, and Points and Authorities in Support

Thereof ("Motion for Sanctions") [#26, filed January 4, 2019]; and

(3)      Plaintiff's Motion to Exclude Expert Testimony of Joshua T. Martin ("Motion to

Exclude") [#47, filed March 29, 2019].

These matters were referred to this Magistrate Judge pursuant to 28 U.S.C. § 636(b), the

Order Referring Case dated August 13, 2018 [#5], and the Memoranda dated February 13, 2019

[#36] and March 29, 2019 [#48]. On March 19, 2019, in anticipation of an evidentiary hearing on

the issue of statutory damages, this court convened a Status Conference during which the Parties

and the court discussed the witnesses to be presented, including expert witnesses. [#45]. That

same day, Defendants Aerogelic Ballooning, LLC ("Aerogelic Ballooning") and Shane Cory ("Mr.

Cory") (collectively, "Defendants") filed a "Motion to Certify Joshua T. Martin as an Expert Rule

702." [#44].[1] The court held an evidentiary hearing on the issue of statutory damages on March

21, 2019, and entertained oral argument on the issue as well as the Motion for Sanctions. [#46].

Being fully apprised of the premises, this court respectfully **RECOMMENDS** that Plaintiff be

**AWARDED** $3,500 in statutory damages; that the Motion for Sanctions be **DENIED**; and that

the Motion to Exclude be **GRANTED IN PART and DENIED IN PART**.[2]

## BACKGROUND

Plaintiff Blaine Harrington III ("Plaintiff" or "Mr. Harrington") is a professional

photographer, and initiated this action for copyright infringement on August 9, 2018, based on

Defendants' use of a photograph from a hot air balloon ("Copyrighted Work") without permission.

[#1]. On September 28, 2018, Defendants filed an Answer to the Complaint. [#12]. The disputes

between the Parties began almost immediately. After this court set a Scheduling Conference for

October 18, 2018, *see* [#7], Plaintiff filed a Motion to Participate in Initial Scheduling Conference

by Telephone ("Motion to Appear by Telephone"), *see* [#13]. Defendants objected, *see* [#14], and,

in the Response, Defendants articulated several bases for such objection, including opposing

counsel's failure to confer; Plaintiff's demand of a disproportionate amount of damages; a delay

in providing a proposed Scheduling Order; "Plaintiff's Counsel is not properly admitted to this

---

[1] Despite being characterized as a motion and including a proposed order, Defendants failed to correctly docket the document as a motion. This court declined to request that the Clerk of the Court convert the document into a "motion," instead contemplating that Defendants could seek to qualify Mr. Joshua Martin as an expert during the evidentiary hearing, and if appropriate, Plaintiff could seek to exclude his testimony pursuant to Rule 702 of the Federal Rules of Evidence.

[2] Though the testimony offered by Mr. Joshua Martin does not appear to be dispositive of any claim or defense, this court proceeds by Recommendation rather than Order because the issues are intertwined with the Recommendation on the appropriate value for statutory damages.

Court"; and "Federal Courts are deluged with 'Professional Photographer' cases including pornography cases where alleged artists plant unlabeled pictures and movies on the internet, then track innocent downloaders, then attempt to extort thousands of dollars for an innocent click of a button." [*Id.* at 1-2]. Defendants' Response to the Motion to Appear by Telephone also included a statement that "[d]enying Plaintiff's ill pled and false Motion may help to defuse this type of Complaint for the public good." [*Id.* at 2]. Plaintiff then filed a Reply, entitled "Plaintiff's Response to Defendant's Opposition to Motion to Participate in Initial Scheduling Conference by Telephone and Proposed Order," in which Plaintiff sought to rebut Defendants' statements reflected in their Response. *See* [#15]. This court granted the Motion to Appear by Telephone, but converted the Scheduling Conference to a Status Conference due to the Parties' failure to submit a proposed Scheduling Order by the deadline set in its original Minute Order. *See* [#17]. The following day, Plaintiff submitted a proposed Scheduling Order, *see* [#18], and the court proceeded to consider scheduling during the Status Conference on October 18, 2018, *see* [#19].

The court entered the Scheduling Order on October 18, 2018, with a number of edits. *See* [#20]. The Scheduling Order contained the following deadlines with respect to expert disclosures: the Parties were required to disclose experts and comply with Rule 26(a)(2)(B) or (C) for disclosures for affirmative experts no later than March 1, 2019, rebuttal experts no later than March 22, 2019, and close expert discovery on or before April 12, 2019. [*Id.* at 5]. During the Scheduling Conference, counsel for Defendants indicated his intent to raise certain defenses. To that end, Defendants filed "Defendants' Motion for Summary Judgement [sic]" on October 29, 2018. [#22]. Plaintiff then filed an Opposition to Motion for Summary Judgment, [#23], and Defendants filed a Reply, [#24].

On November 29, 2018, Judge Krieger issued an Opinion and Order Denying Motion for Summary Judgment. *See* [#25].  In it, Judge Krieger not only denied Defendants' Motion for Summary Judgement, but included an Order to Show Cause as to "why the Court should not grant summary judgment to Mr. Harrington on the question of liability on his claim of copyright infringement, leaving only the question of the appropriate amount of statutory damages to be addressed in a future evidentiary hearing." [*Id.* at 4-5].

On January 4, 2019, Plaintiff filed the instant Motion for Sanctions. [#26].  That same day, having not received any response to the Order to Show Cause by Defendants, Judge Krieger entered an Order granting summary judgment in favor of Plaintiff and setting an evidentiary hearing on the issue of statutory damages for January 24, 2019. *See* [#27].  Defendants then filed a "Motion to Continue Evidentiary Hearing to February, 2019 or Close the Case," [#28], which Judge Krieger granted in part as to the rescheduling of the evidentiary hearing to January 28, 2019, and denied in part as to any substantive relief requested by Defendants. [#29].  Defendants then filed a Second Motion to Continue on January 16, 2019, [#30], which Judge Krieger granted the following day, *see* [#31].  Then, on January 21, 2019, Plaintiff filed a Motion to Continue the evidentiary hearing, [#32], which Judge Krieger granted, vacating the February 4, 2019 hearing, *see* [#35].  On February 13, 2019, Judge Krieger referred both the issue of statutory damages and the Motion for Sanctions to this Magistrate Judge for Recommendation. [#36].

On February 21, 2019, this court set the evidentiary hearing as to the appropriate amount of statutory damages for March 21, 2019. [#38].  The court also set deadlines for submission of proposed witness and exhibits lists for March 7, 2019, and for objections to such designations no later than March 14, 2019. [*Id.*].  On March 7, 2019, Defendants submitted their proposed witness

and exhibit lists.  [#39].  On March 8, 2019, Plaintiff submitted his proposed witness and exhibit lists.  [#40].  No objections were raised or filed by either party by March 14, 2019.

Nevertheless, having reviewed the proposed witness and exhibit lists and finding defense counsel listed as a witness on each side's witness list, this court convened a Status Conference on March 19, 2019.  [#45].  It was during this conference that Plaintiff's counsel first raised an issue with the testimony of either of Defendants' expert witnesses, Joshua T. Martin and Lewis Brande.  [*Id.*].  This court indicated its intent, given its referral role, to take testimony from any individual offered as an expert and then have Plaintiff file a Motion to Exclude no later than March 29, 2019, with a Response by Defendants filed no later than April 12, 2019, so that Judge Krieger could have a complete record to review with any Recommendation and/or Order.  [*Id.*].

The Parties appeared for the Evidentiary Hearing on the issue of statutory damages on March 21, 2019.  [#46].  At the hearing, Plaintiff testified on his own behalf, but did not offer nor seek to admit any other evidence, including any of the exhibits listed on his Exhibit List.  *Compare* [#49] *with* [#40].  Defendants elicited testimony from Mr. Cory and Mr. Joshua Martin, and sought to tender Mr. Joshua Martin as an expert.  [#49].  Defendants also offered a series of exhibits, which did not—in this court's review—directly correlate to the proposed exhibits listed in Defendants' Exhibit List.  *Compare* [#46-1 through #46-16] *with* [#39 at 2].  The court then allowed the Parties to make limited argument with respect to both the issue of statutory damages and the Motion for Sanctions, and took these matter under advisement for the purposes of this Recommendation.

Plaintiff filed the instant Motion to Exclude on March 29, 2019, [#47], and on April 15, 2019, Defendants filed "Defendants' Motion to Convert Plaintiff's Motion to Exclude Expert Testimony of Joshua T. Martin to a Reply to Defendants' Motion to Certify Joshua T. Martin as

an Expert Rule 702 and Accept this Filing as a Response to Plaintiff's Reply" ("Defendants' Response to the Motion to Exclude").[3]   [#50].   Accordingly, these matters are ripe for Recommendation.

## LEGAL STANDARDS

### I.   Copyright Damages

An infringer of copyright is liable for either the copyright owner's actual damages or statutory damages under 17 U.S.C. § 504.  In his Complaint, Mr. Harrington seeks only an award of statutory damages, *see* [#1 at 5], which Judge Krieger recognized in her Order granting summary judgment on liability in favor of Plaintiff, *see* [#27].

The Copyright Act provides that statutory damages ordinarily may be awarded in the sum of not less than $750 or more than $30,000.  17 U.S.C. § 504(a).  However, if the infringer sustains the burden of proving, and the court finds, that the infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright, the court may exercise its discretion to reduce the award of statutory damages to a sum of not less than $200.  *Id.* § 504(c)(2). The statute makes clear that an award of statutory damages is for all infringements involved in an action, with respect to <u>any one work</u>.  *Id.* § 504(c)(1) (emphasis added).  Put another way, "[a]

---

[3] Defendants' Response to the Motion to Exclude is flawed for multiple, independent reasons. First, the court set a deadline of April 12, 2019 for any response to the Motion to Exclude.  [#45]. Without leave of court and without any statement of conferral, Defendants filed their Response to the Motion to Exclude on April 15, 2019.  [#50].  Second, Defendants seek affirmative relief through the Response, which is expressly prohibited by Local Rule 7.1(d) ("A motion shall not be included in a response or reply to the original motion.  A motion shall be filed as a separate document.").  Third, Defendants' Motion to Certify was not, in fact, filed properly as a motion in the court's Electronic Court Filing ("ECF") system and, as a matter of procedure, is not what the Scheduling Order contemplates for the disclosure of expert witnesses.  Nevertheless, because this court proceeds in the referral capacity, I decline to strike the filing and construes it as a Response to the Motion to Exclude.

single infringer of a single work is liable for a single amount [now between $200 and $150,000],[4] no matter how many acts of infringement are involved in the action and regardless of whether the acts were separate, isolated, or occurred in a related series."  Melville B. Nimmer et al., NIMMER ON COPYRIGHT, 14-135 § 14.04[E][2][*a*][*i*] (quoting H. Rep. p. 162 and 17 U.S.C. § 504(c)(1)).

As noted by Judge Krieger in her Order Denying Summary Judgment, "[t]he question of the appropriate amount of statutory damages to award involves consideration of a wide array of factors by the Court, from the degree of willfulness or inadvertence by the infringer to the deterrent purposes of the Copyright Act and the typical license fees charged for the use of the work."  [#25 at 4 (citing *Girlsongs v. 609 Industries, Inc.*, 625 F. Supp. 2d 1127, 1130-31 (D. Colo. 2008))]. Other factors include "the expenses saved, and profits earned, by the infringer," and "the revenue lost by the copyright holder." *Bryant v. Media Right Prod. Inc.*, 603 F.3d 135, 144 (2d Cir. 2010). These last two factors allow the court to account for the extent of infringement.  *Arista Records LLC v. Lime Group LLC*, 784 F. Supp. 2d 313, 317 (S.D.N.Y. 2011).

## II.     Rule 11 of the Federal Rules of Civil Procedure

Plaintiff moves for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure. Rule 11(b) provides that:

> REPRESENTATIONS TO THE COURT.  By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

---

[4] These endpoints include the minimum statutory damages in the case of an "innocent infringer" of $200, and the maximum statutory damages of $150,000 for willful infringement, which is not alleged or argued by Plaintiff. *See* [#1 at 5].

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

The Rule (and this District's Local Rules of Civil Practice) specify procedures for a motion for sanctions, as well as limitations on the nature of any sanctions.  First, a motion for sanctions under Rule 11 must be served under Rule 5 of the Federal Rules of Civil Procedure, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time that the court sets.  Fed. R. Civ. P. 11(c)(2).  *See also Kazazian v. Emergency Serv. Physicians, P.C.*, 300 F.R.D. 672, 677 (D. Colo. 2014) (quoting Fed. R. Civ. P. 11(c)(2)).  In addition, Local Rule 54.3 requires the movant to support the motion by affidavit, and the contents of the motion must include a summary of the relevant qualifications and experience for each attorney seeking fees, as well as a detailed description of the services rendered, the amount of time spent, the hourly rate charged, and the total amount sought.  *See* D.C.COLO.LCivR 54.3(a), (b).  Second, a sanction imposed under Rule 11 must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated.  Fed. R. Civ. P. 11(c)(4).  In addition, a court may not impose monetary sanctions against a represented party for violation Rule 11(b)(2).  Fed. R. Civ. P. 11(c)(5).

### III.    Experts

### A.    Required Disclosures

Affirmative experts as contemplated by the District of Colorado's form Scheduling Order are typically experts designated by a party who bears the burden of proof on an issue.  *See Anderson v. Seven Falls Co.*, Civil Action No. 12-cv-01490-RM-CBS, 2013 WL 3771300, *6 (D. Colo. July 18, 2013) (citing Advisory Comm. Notes to 1993 Amendments to Fed. R. Civ. P. 26). Rebuttal witnesses are those who are "intended solely to contradict or rebut evidence on the same subject matter identified" by affirmative experts.  Fed. R. Civ. P. 26(a)(2)(D)(ii); *E.E.O.C. v. JBS USA, Inc.*, No. 10-cv-02103-PAB-KLM, 2013 WL 3302429, at *6 (D. Colo. July 1, 2013). Specially-retained experts are required to provide written reports that reflect a complete statement of all opinions the witness will express and the basis and reasons for them, the facts or data considered by the witness in forming them, any exhibits that will be used to summarize or support them, the witness's qualifications, including a list of all publications authored in the previous 10 years, and a statement of the compensation to be paid for the study and testimony in the case.  Fed. R. Civ. P. 26(a)(2)(B).  An expert witness who is not specially-retained for the purpose of trial is still required to make a disclosure of the subject matter on which the witness is expected to present evidence un Federal Rule of Evidence 702, 703, or 705, and a summary of the facts and opinions to which the witness is expected to testify to.  Fed. R. Civ. P. 26(a)(2)(C).

Failure to disclose, or to properly provide information required by Rule 26(a), is subject to Rule 37(c) of the Federal Rules of Civil Procedure.  Under Rule 37(c), a party is not permitted to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.  Fed. R. Civ. P. 37(c).  In addition to or instead

of preclusion, the court may impose other sanctions upon motion and after giving opportunity to

be heard.  *Id.*

### B.       Substantive Requirements Under the Federal Rules of Evidence

Rules 701 and 702 of the Federal Rules of Evidence address the substantive requirements

for testimony under the Federal Rules of Evidence.  Rule 701 provides that:

> If a witness is not testifying as an expert, testimony in the form of an opinion is
> limited to one that is:
>
> **(a)** rationally based on the witness's perception;
>
> **(b)** helpful to clearly understanding the witness's testimony or to determining a
> fact in issue; and
>
> **(c)** not based on scientific, technical, or other specialized knowledge within the
> scope of Rule 702

Fed. R. Evid. 701.  Rule 702 addresses testimony by expert witnesses who are qualified as experts

by knowledge, skill, experience, training, or education.  Such experts may testify in the form of an

opinion if:

> **(a)** the expert's scientific, technical, or other specialized knowledge will help the
> trier of fact to understand the evidence or to determine a fact in issue;
>
> **(b)** the testimony is based on sufficient facts or data;
>
> **(c)** the testimony is the product of reliable principles and methods; and
>
> **(d)** the expert has reliably applied the principles and methods to the facts of the
> case.

Fed. R. Evid. 702.

It is well established that trial courts are charged with the responsibility of acting as

gatekeepers of expert testimony to ensure that expert testimony or evidence admitted is not only

relevant, but also reliable.  *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147-152 (1999);

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 588-89 (1993).  To fulfill that

gatekeeper function, courts within the United States Court of Appeals for the Tenth Circuit ("Tenth

Circuit") conduct a two-part inquiry.  First, this court considers whether the expert's proffered

testimony has a reliable basis in the knowledge and experience of his or her discipline by conducting a preliminary inquiry into the expert's qualifications and the admissibility of the proffered evidence, i.e., whether the reasoning or methodology underlying the testimony is valid. *Cook v. Rockwell Int'l Corp*., 580 F. Supp. 2d 1071, 1082 (D. Colo. 2006) (citing *Butler v. A.O. Smith Corp*., 400 F.3d 1227, 1232-33 (10th Cir. 2004)).  Second, the court considers whether the proposed testimony is sufficiently relevant to the issues presented to the factfinder.  *See id.*  The party offering the expert opinion bears the burden of establishing its admissibility, including the foundational requirements by a preponderance of the evidence.  *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009); *United States v. Crabbe*, 556 F. Supp. 2d 1217, 1220 (D. Colo. 2008).

"Generally, the district court should focus on an expert's methodology rather than the conclusions it generates." *Dodge v. Cotter Corp*., 328 F.3d 1212, 1222 (10th Cir. 2003).  To that end, courts consider the following non-exhaustive factors in analyzing whether a particular expert opinion meets the requirements of Rule 702, *Daubert*, and their progeny:

> (1) whether the opinion at issue is susceptible to testing and has been subjected to such testing; (2) whether the opinion has been subjected to peer review; (3) whether there is a known or potential rate of error associated with the methodology used and whether there are standards controlling the technique's operation; and (4) whether the theory has been accepted in the scientific community.

*Id.*  The court's analysis is opinion-centric, rather than expert-centric.  *See United States v. Nacchio*, 608 F. Supp. 2d 1237, 1251 (D. Colo. 2009).

Neither the Federal Rules of Evidence nor the Federal Rules of Civil Procedure define the procedure by which this court discharges its duties as a gatekeeper, but Judge Krieger has adopted a specific procedure for *Daubert* determinations that is reflected in her Trial Preparation Order—Civil, entered in this action on October 19, 2018.  [#21 at 2].  The trial court's discretion in admitting or excluding evidence under *Daubert* is broad.  *Dodge*, 328 F.3d at 1223.  If a party

challenges the foundational sufficiency of an expert's opinion, the court must make factual findings, preferably after an evidentiary hearing.  *Id.*; *but cf. United States v. Chapman,* 839 F.3d 1232, 1239 (10th Cir. 2016) ("Tenth Circuit case law does not mandate that a hearing be held." (citation and quotation marks omitted)).  But in the context of such hearings, the court focuses on principles and methodology, not the conclusions generated or their weight or persuasiveness. *Daubert*, 509 U.S. at 595; *Crabbe*, 556 F. Supp. 2d at 1220.

## ANALYSIS

Though filed last in time, this court first considers Plaintiff's Motion to Exclude because of its potential impact on the issue of statutory damages, then statutory damages and, finally, the Motion for Sanctions.

## I.  Motion to Exclude

As an initial matter, it is important to distinguish between the testimony provided by Mr. Joshua Martin based on his percipient knowledge as opposed to the opinions that he seeks to offer. Mr. Cory testified that he hired Mr. Joshua Martin for "website maintenance and development" and has done so for the last six years.  [#49 at 43:22-44:2].[5]  In that vein, Mr. Joshua Martin testified about actions that he took in investigating the authorship of the Copyrighted Work, *see, e.g.*, [*id.* at 49:16-21, 50:21-51:13], and what advice he provided to Mr. Cory, *see* [*id.* at 51:16-18].  But Mr. Joshua Martin also offered testimony and opinions regarding the value of the Copyrighted Work and "honeypotting," a practice characterized as intentionally setting up a server with little or no security for the purposes of monitoring traffic and malicious actors.  [*Id.* at 58:22-59:4].  The Motion to Exclude focuses upon Mr. Joshua Martin's testimony regarding

---

[5] When citing to a transcript, this court cites to the document number generated by the ECF system but the page and line number generated by the transcript.

"honeypotting." [#47]. To the extent that Mr. Joshua Martin testifies to what actions he took on behalf of Defendants in the ordinary course of his work in website maintenance and development for Defendants, including pre-use research into whether the Copyrighted Work was protected, the Motion to Exclude does not appear to challenge the admissibility of such testimony.

In Response, Defendants argue that Plaintiff's Motion to Exclude is untimely and improper, as Plaintiff was required to respond to the Motion to Certify. [#50]. Defendants then request the court to "convert" their filing into a Motion to Strike the Motion to Exclude. [*Id.*]. Finally, Defendants argue that Mr. Joshua Martin's testimony is reliable under Rule 702 and should be permitted. [*Id.*].

Though the Parties did not comply with Judge Krieger's standing order with respect to the filing of Rule 702 Motions, this court finds that it is appropriate to move forward with a Recommendation, in hopes of securing a just, speedy, and inexpensive resolution of this matter. Fed. R. Civ. P. 1. Upon consideration of Plaintiff's Motion to Exclude, this court finds two independent bases to recommend the granting of the Motion. First, though not argued by Plaintiff, the disclosure of Mr. Joshua Martin as an affirmative expert was untimely and/or failed to comply with the requirements for expert disclosures under either Rule 26(a)(2)(B) or (C). Second, after applying the *Daubert* standard, this court finds Mr. Joshua Martin's expert opinions should be excluded.

### A.    Application of Rule 37(c)

The deadlines and obligations set forth in the Scheduling Order are not simply suggestions, but rather binding orders of the court that may only be altered after a showing of good cause. Fed. R. Civ. P. 16(b)(4). As far as this court can discern from the record before it, Defendants first

identified Joshua T. Martin as an expert on March 7, 2019 on their witness list [#39].[6]  On that list,

Mr. Joshua Martin is identified as "expert hired to determine it is free-confirmed it is free."  [*Id.*

at 1].   Then, only after this court convened a Status Conference with the parties to discuss the

presentation of evidence [#42], Defendants filed their Motion to Certify, which stated, in its

substantive entirety:

> Defendants, Aerogelic Ballooning, LLC and Shane Cory, by and through the undersigned attorney, hereby motions this Court to certify Joshua T. Martin as an expert in computer web technologies and web information security, which extends to protecting copyrighted photographs online. This motion is opposed. …
>
> Attached hereto is the Affidavit of Joshua T. Martin which fully describes his eight continuous years in the above noted technology.  On March 6th 2019 Defendants filed their witness list disclosing Joshua T. Martin as an expert.  This Motion merely formalizes said designation.
>
> Wherefore Defendants respectfully request this expert certification wherein Joshua T. Martin shall be present at the March 21st, 2019 Evidentiary Hearing for any questioning.

[#44].

To the extent that Defendants wished to offer Mr. Joshua Martin as any type of expert with

respect to their innocent infringer defense, he would be considered an affirmative expert because

Defendants bear the burden of proof on that issue.  The Scheduling Order required affirmative

experts and their required disclosure to be made on or before March 1, 2019—a deadline that

Defendants did not meet.  *See* [#20 at 5].  Nor did Defendants seek clarification from the court

regarding any anticipated expert testimony once Judge Krieger entered summary judgment in favor

of Plaintiff on January 4, 2019.  [#27].

---

[6] The filed document also bears the header of "1:18-cv-2023-MSK-NYW Document 38 Filed 02/21/19 USDC Page 2 of 3], that appears to have beeen assigned by the court's ECF system.  But that header refers to the blank form provided by the court on February 21, 2019, not a filing by Defendants.  [#38-2].

Even if not considered untimely, the March 7 identification was not accompanied by either a summary required by a non-retained expert under Fed. R. Civ. P. 26(b)(2)(C) or an expert report under Fed. R. Civ. P. 26(b)(2)(B).  Then, after Plaintiff belatedly objected to Mr. Joshua Martin's testimony during the March 19 Status Conference, Defendants filed a "Motion to Certify Joshua T. Martin as an Expert Rule 702."[7] [#44].  Though this filing includes an Affidavit of Joshua T. Martin [#44-2], it does not satisfy the requirements of Rule 26(a)(2)—regardless of whether Mr. Joshua Martin is considered a specially-retained expert or non-retained expert as to the innocent infringer defense.  There is no disclosure of the facts or data upon which he intends to rely let alone a complete statement of all opinions he will express and the basis and reasons for them, identification of any exhibits that will be used to summarize or support them, a list of all other cases in which he has testified as an expert at trial or by deposition in the last four years, or a statement of the compensation to be paid for the study and testimony in the case.  Fed. R. Civ. P. 26(a)(2)(B), (C).  Rule 37(c) contemplates that a party will not be allowed to use the testimony of an improperly disclosed expert witness unless the failure was substantially justified or is harmless.

Defendants' inadequate disclosure of Mr. Joshua Martin hampered Plaintiff's and this court's ability to prepare for and evaluate Mr. Joshua Martin's proffered expert testimony prior to the evidentiary hearing on the issues of damages, or in the manner prescribed by Judge Krieger's Trial Preparation Order—Civil.  As a result, this court convened a Status Conference with the Parties to discuss the expert testimony they anticipated at the evidentiary hearing.  [#45].  This court advised all Parties that it intended to have Mr. Joshua Martin testify at the evidentiary hearing and then would entertain a Motion to Exclude.  [*Id.*].  Therefore, this court declines to recommend

---

[7] This court set a deadline of March 14, 2019 for the Parties to file their respective objections, if any, to the proposed witness(es) or exhibit(s). [#38 at 1].  Plaintiff failed to file any objections to Mr. Joshua Martin or Lewis Brande by that deadline.

either denying Plaintiff's Motion to Exclude or converting Defendants' Response to a Motion to Strike as requested by Defendants.

Defendants have also failed to provide any basis, let alone substantial justification, for their failure to adhere to the requirements of Rule 26(a)(2).  Accordingly, this court finds that this basis alone is sufficient under Rule 37(c) to recommend that any expert testimony from Mr. Joshua Martin be precluded.  Nevertheless, this court proceeds to considering proffered opinions under the applicable *Daubert* standard.

### B.     Application of Rules 701 and 702

To the extent that Defendants seek to rely upon Mr. Joshua Martin's testimony about the appropriate amount of statutory damages, Mr. Harrington's failure to adequately protect the Copyrighted Work online, and "honeypotting" generally or specifically as to the Copyrighted Work, this court respectfully recommends that such testimony be precluded for several reasons.

*First*, as a general matter, this court is not persuaded that the principles or methodology underlying Mr. Joshua Martin's testimony is sufficiently reliable.  Among the non-exhaustive and non-dispositive factors this court considers when analyzing the reliability of Mr. Joshua Martin's testimony include: whether the expert's technique or theory can and has been tested; the theory has been subject to peer review and publication; the known or potential rate of error of the technique or theory when applied; the existence and maintenance of standards and controls; and the general acceptance of the methodology in the relevant scientific community. *See Kumho*, 526 U.S. at 149-50; *103 Investors I., L.P. v. Square D. Co.*, 470 F.3d 985, 990 (10th Cir. 2006) (*citing Daubert*, 509 U.S. at 593-94).   Because the opinions offered by Mr. Joshua Martin are not particularly technical in nature, "the relevant reliability concerns may focus upon personal knowledge or experience." *Kumho*, 526 U.S. at 150.

But Mr. Joshua Martin did not testify to any prior experience or specialized knowledge with clearing, valuation of or licensing of copyrighted photographs, from the internet or otherwise. He did not testify that he undertook any special training or education to develop his methodology for determining whether a particular photographic image was subject to a copyright, or the data or inputs he used to calculate a market price for the use of the Copyrighted Work, or that he followed a particular methodology that is well-accepted in the field. Nor did he testify that the search engines that he used, including Google Images or Pixabay,[8] are acceptable or adequate resources for searching for whether a particular work is subject to copyright protection or licensing. In addition, the materials upon which Mr. Joshua Martin relied upon for some of his conclusions, such as whether the Copyrighted Work was available "for free" on Pinterest, *see* [#49 at 53:15-17], are not supported by the record. Other than attorney's characterization, there is nothing in the record that indicates that the Copyrighted Work was available "for free" on Pinterest. Instead, Mr. Joshua Martin testified that he "found many websites . . . time.com, Trip Advisor and Pinterest are highlighted where the photo was available without -- in regards to watermarking or direct copy market linking." [*Id.* at 53:1-14]. As Judge Krieger already noted, "[e]ven the materials the Defendants rely upon for the purported proposition that the Plaintiff's image was made available 'free to download' on a page known as 'Big Wallpapers' note that 'Images are copyright to their respective owners.'" [#29].

Similarly, though Mr. Joshua Martin testified that he could download the Copyrighted Work "for free" from Mr. Harrington's website, he later admitted that he cropped out the copyright notice from a screen capture of Mr. Harrington's website that was plainly viewable for any user of

---

[8] Mr. Joshua Martin testified that he used Getty Images to search for a "similar photo" to the Copyrighted Work, rather than the Copyrighted Work itself. [#49 at 51:3-4].

the website.  [#49 at 56:7-19, 60:24-61:18].  And there is no testimony that simply visiting one website, Getty Images, and considering photographs that are subjectively "similar" (without any testimony regarding the principles that guided a conclusion that a particular photograph was "similar") is a sufficient or reliable methodology in ascertaining the value of this particular Copyrighted Work.  This court simply finds inadequate principles and methodology underpinning the opinions of Mr. Joshua Martin, regardless of the specific conclusions he drew.

    *Second*, while the lack of a watermark or copyright notice may be probative as to whether Defendants were "not aware and had no reason to believe that his or her acts constituted an infringement of copyright," 17 U.S.C. § 504(c)(2), Mr. Harrington's purported lapses in website protection—whether inadvertent or intentional[9]—are not particularly relevant to or probative of the appropriate amount of statutory damages in this action.  Generally, the focus of the statutory damages analysis is on the Defendants' conduct.  *Energy Intelligence Grp., Inc. v. CHS McPherson Refinery, Inc.*, 300 F. Supp. 3d 1356, 1372 (D. Kan. 2018) (citing 6 William F. Patry, *Patry on Copyright*, § 22:174).  In these particular circumstances, Mr. Joshua Martin's proffered testimony about honeypotting relates to Mr. Harrington's own website—which as discussed in more detail below—is not identified as the origin of Defendants' use of the Copyrighted Work.  Accordingly, Defendants have failed to establish an adequate nexus between Mr. Harrington's alleged lapses in his own website protection and Defendants' actions concerning the Copyrighted Work to make such testimony relevant to the issue of statutory damages in this case.  *Cf. Nunes v. Rushton*, No. 2014-cv-00627-JNP-DBP, 2018 WL 2214593, at *2 (D. Utah May 14, 2018) (observing that the

---

[9] [#49 at 59:11-20 ("Given the number of ways I was able to find the site without any attribution or watermark, and given the apparent flaws on his website to download the photos again with no watermark, it would appear that Mr. Harrington is either unaware of the flaws in the site or would be intentionally doing this.")].

court had broad discretion to consider the relevant conduct of both parties in fashioning an appropriate statutory award).

This court finds appropriate to consider Mr. Joshua Martin's factual testimony regarding the steps he took prior to using the Copyrighted Work on Aerogelic Ballooning's website concerning the degree of culpability of Defendants, *see, e.g.*, *Girlsongs*, 625 F.Supp.2d at 1130-31, but otherwise, his proffered expert opinions should be precluded. Accordingly, this court respectfully **RECOMMENDS** that the Motion to Exclude be **GRANTED IN PART and DENIED IN PART**.

## II.     Amount of Statutory Damages

This court now considers the appropriate amount of statutory damages for Defendants' copyright infringement. As discussed above, this court considers various factors in recommending the amount for statutory damages, including the degree of willfulness or inadvertence by the infringer; the deterrent purposes of the Copyright Act; the typical license fees charged for the use of the work; the expenses saved, and profits earned, by the infringer; and the revenue lost by the copyright holder.[10]

Mr. Harrington testified that he has been a professional travel and location photographer for 42 years. [#49 at 3:20-22]. Since approximately 1980, Mr. Harrington has been involved in stock photography, both in a pre-digital and post-digital market. [*Id.* at 4:12-22]. Mr. Harrington makes his work available by licensing through agencies, such as Getty Images, Alamy, and AGE Fotostock, as well as directly. [*Id.* at 4:25-5:12]. Mr. Harrington testified that there are

---

[10] While the Seventh Amendment provides a right to a jury trial on all issues pertinent to an award of statutory damages under § 504(c) of the Copyright Act, *see Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 355 (1998), neither side objected to proceeding to an evidentiary hearing before this Magistrate Judge or requested a jury trial.

industry-wide standards of pricing software for photographs, one of which is the Getty price calculator. [*Id.* at 8:16-9:1]. He further testified that there were certain parameters that were used to calculate the associated pricing, including the kind of use, online or print, the size of the image, and the duration of the use. [*Id.* at 9:16-25]. In this case, Mr. Harrington used the following data inputs: (1) the Copyrighted Work was used for advertising in directories; (2) the use was online; (3) the image used was full sized; and (4) for a three or five-year license. [*Id.*]. He then testified that for a three-year license, the copyright fee was "around 1600," [*id.* at 10:1-10], and "over 2000" for five years, *see* [*id.* at 10:9-12]. He later testified that the licensing fee was a "rights managed," rather than a "royalty free" or "micro stock" rate, but did not define any of those types of fees. [*Id.* at 19:1-66]. The court inquired, and Mr. Harrington confirmed, that he specifically put the Copyrighted Work into the Getty Pricing Calculator. [*Id.* at 11:11-13].

Mr. Cory also testified at the evidentiary hearing. He testified that prior to using the Copyrighted Work on the Aerogelic Ballooning website, he sent the picture to Mr. Joshua Martin and specifically asked whether "this picture is allowed to be used," and that Mr. Joshua Martin informed him that "it was good to use." [#49 at 33:16-34:1, 35:6-16]. Mr. Cory then confirmed that he was notified on October 30, 2017 of the infringement [*id.* at 36:13-16], and that he removed the images from the Yext advertising platform immediately, [*id.* at 36:21-24]. Nevertheless, the image was still posted to yellowpages.com until March 2018. [*Id.* at 37:13-21]. Once notified by Plaintiff's counsel that the Copyrighted Work was still posted on one of the advertising mediums that Yext uses, Mr. Cory called Yext to have the picture removed. [*Id.* at 41:11-42:4]. Mr. Cory testified that he found a balloon picture that he considered similar to the Copyrighted Work to be available on Getty Images with a royalty-free license for $499. [*Id.* at 42:8-12, 43:10-13]. In his testimony, Mr. Joshua Martin confirmed that Mr. Cory asked him to conduct a search before using

the Copyrighted Work and testified that he used the Google Images reverse tool, Getty Images, and Pixabay to look for the authorship of the Copyrighted Work. [*Id.* at 49:18-21, 50:21-24, 51:2-9]. His search lasted approximately 60 minutes. [*Id.* at 50:25-51:1]. He then advised Mr. Cory that he found no evidence of authorship or copyright after his pre-use search. [*Id.* at 51:10-18].

*Willfulness or Inadvertence.* First, this court finds that Defendants did not act willfully in infringing Plaintiff's copyright. There was no testimony, either on direct or cross-examination, sufficient to establish that Mr. Cory was either actually or constructively aware that the photograph was protected by a copyright but nevertheless used without regard to that knowledge. *See Zuffa, LLC v. Gonzalez*, No. 17-cv-01805-CMA-NYW, 2017 WL 6016403, at *4 (D. Colo. Nov. 14, 2017) ("'[i]t seems clear that as here used 'willfully' means with knowledge that the defendant's conduct constitutes copyright infringement."). Instead, the unrebutted testimony established that Mr. Cory asked Mr. Joshua Martin to determine if "this picture was allowed to be used," and Mr. Joshua Martin undertook a search to respond to Mr. Cory's inquiry. Nor is there any evidence, despite Plaintiff's suggestion, that the pre-use search that Mr. Joshua Martin undertook was unreasonable; indeed, there is no evidence to establish either the reasonableness or unreasonableness of the search. The court further notes that upon being contacted by Plaintiff's counsel in October 2017, Mr. Cory immediately contacted Yext to remove the Copyrighted Work, and again in March 2018, when advised that the Copyrighted Work was still visible on yellowpages.com.

But this court also does not conclude that Defendants' use of the Copyrighted Work was inadvertent. Defendants were well-aware that the image could be subject to some type of copyright protection and/or licensing fee; otherwise, Mr. Cory would not have requested Mr. Joshua Martin to conduct a pre-use search. Nor, despite the repeated characterizations by defense counsel that

the Copyrighted Work was available "for free," did Mr. Cory testify under oath that *he* downloaded the photograph from a location where it was not marked with some indicia of copyright. Instead, the testimony reflected that Mr. Cory could not recall and was unable to identify where he obtained the image, *e.g.*, [#49 at 34:13-35:5], and none of the testimony identified the origin of the image, *see generally* [#49].[11]  Further, Mr. Joshua Martin admitted during his testimony that there are instances of the Copyrighted Work being marked with notice and/or an attribution to Mr. Harrington.

     ***Deterrent purposes of the Copyright Act.***  Second, the court considers the deterrent purposes of the Copyright Act.  The United States Supreme Court has long held that courts should fashion statutory damages awards that will achieve the deterrent purposes of the provision:

> [A] rule of liability which merely takes away the profits from an infringement would offer little discouragement to the infringers. It would fall short of an effective sanction for enforcement of the copyright policy. The statutory rule, formulated after long experience, not merely compels restitution of profit and reparation for injury but also is designed to discourage wrongful conduct. The discretion of the court is wide enough to permit a resort to statutory damages for such purposes. Even for uninjurious and unprofitable invasions of copyright the court may if it deems it just, impose a liability within the statutory limits to sanction and vindicate statutory policy.

*F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 233 (1952).

     Mr. Harrington chooses to register certain photographs based on his assessment of their quality [#49 at 7:23-8:10], and registration is a prerequisite to suing for infringement, but not for copyright protection, *see Enter. Mgmt. Ltd., Inc. v. Warrick*, 717 F.3d 1112, 1119 (10th Cir. 2013) (citing 17 U.S.C. § 411(a)).  As Mr. Harrington and Mr. Joshua Martin testified, protecting

---

[11]  In correspondence dated September 26, 2018, with Plaintiff's counsel that is attached to Defendants' Answer, Mr. Cory indicates an origin of the Copyrighted Work.  *See* [#12-1 at 2]. But the correspondence is not notarized, *see* [*id.*], and is not supported by sworn testimony given by Mr. Cory and Mr. Joshua Martin at the evidentiary hearing.  *See* [#49].

photographs in the digital era is challenging, and courts, including at least one in this District, have recognized that one purpose of a statutory award for copyright infringement is to put defendants on notice that it costs less to obey the Copyright Act than to violate it.  *See Girlsongs*, 625 F. Supp. 2d at 1331 (citing cases).  Courts routinely award as statutory damages in cases such as this amounts that are between two and three times the license fee.  *Id.* (collecting cases).

*Licensing Factors*.  The evidence presented as to the typical license fees charged for the use of the Copyrighted Work is limited at best.  As discussed above, Mr. Harrington testified that he used Getty Images Pricing Calculator, and it yielded a three-year licensing rate of approximately $1,600.  Despite identifying various exhibits on his Exhibit List, including four "Photography License[s]," [#40 at 2], Plaintiff offered no exhibits at the hearing, including any documentation corroborating the Getty Pricing Calculator analysis.  [#49].  On cross, Mr. Harrington could not identify any photography licenses specific to the Copyrighted Work.  [*Id.* at 18:7-14].  While defense counsel attempted to solicit testimony from Mr. Harrington regarding the value of other settlements arising from copyright actions associated with the Copyrighted Work, Defendants failed to offer any admissible evidence with respect to the value of those other settlements.  [*Id.* at 19:7-28:5].  On re-direct, Mr. Harrington testified that he settled the lawsuit involving the same Copyrighted Work with Sandia Insurance for $3,000, with each side bearing its own attorney's fees and costs.  [*Id.* at 29:2-7; #46-5].[12]

*Other considerations*.  Finally, this court briefly addresses other considerations.  Mr. Cory testified that he routinely receives photographs from his clients that he is permitted to use for free, and that he found an image that he subjectively believed to be comparable available on Getty

---

[12] This court takes judicial notice of the Notice of Voluntary Dismissal in *Harrington v. Sandia Insurance*, Case No. 18-cv-46 (D. Ariz.).

Images for $499.  In considering the extent of infringement, it appears that the Copyrighted Work appeared six times, on three different websites, associated with Defendants, for less than three years.  [#1 at ¶¶ 11-12; #49 at 9:16-19, 29:8-10, 35:19-22].  There is no evidence that Defendants earned any profits from the use of the Copyrighted Work, or of any additional revenue lost by Plaintiff due to Defendants' infringement, other than the loss of a single licensing fee.  Nor is there any evidence in the record to suggest that Defendants have serially infringed copyrights of Plaintiff or any other copyright holder.  And this court agrees with the *Nunes* court, which held that litigation conduct by the parties is better left to consider in the context of whether attorney's fees and costs are appropriate, rather than in the context of statutory damages.  *Nunes*, 2018 WL 2214593, at *4 (recognizing that the litigation conduct of the parties and the legal fees incurred are driven largely by the decisions made by counsel, and thus not very probative of the conduct and attitude of the parties related to the infringing conduct).

Weighing all these factors, this court respectfully **RECOMMENDS** that Plaintiff be **AWARDED** $3,500 in statutory damages, exclusive of any attorney's fees and costs that are not before this court for Recommendation or argued by the Parties in any of the instant filings.

### III.    Motion for Sanctions

Finally, this court turns to Plaintiff's Motion for Sanctions.  Plaintiff seeks sanctions based on three different grounds: (1) Defendants' Response to the Motion for Leave to Appear by Teleconference, Defendants' Motion for Summary Judgment, and Defendants' Reply to the Motion for Summary Judgment were done for the improper purpose of defaming Plaintiff; (2) the filing of those three papers were done to harass and embarrass Mr. Harrington, and cause him to incur increased litigation costs; and (3) the filing of those three papers were done in bad faith.  [#26 at 1-2].  Plaintiff sought an order denying the Motion for Summary Judgment, together with a

monetary award for reasonable attorney's fees, costs, and expenses.   [*Id.* at 2].   This court respectfully **RECOMMENDS** that the Motion for Sanctions be **DENIED**.

As an initial matter, a portion of the relief sought by Mr. Harrington is moot, given the Order granting summary judgment in favor of Plaintiff.   [#27].   The only remaining relief sought by Plaintiff is his attorney's fees and costs, presumably associated with the two Response sand one Reply identified in the Motion for Sanctions.

But Plaintiff's Motion for Sanctions is procedurally deficient in numerous regards.   First, Plaintiff does not support his motion with an affidavit.   *See* [#26; #26-1 through #26-6].   Second, despite Plaintiff's request for attorney's fees and costs, [#26 at 13], there is no summation of counsel's relevant qualifications and experience, or "a detailed description of the services rendered, the amount of time spent, the hourly rate charged, and the total amount claimed." D.C.COLO.LCivR 54.3(b)(1), (2).   Third, the Certificate of Service indicates that Plaintiff relies upon service through the court's ECF system to serve Defendants.   [#26 at 14].   There is no indication that Plaintiff served his Motion for Sanctions on Defendants pursuant to Rule 5, or that he waited 21 days before filing the motion with the court.   Nor is there any indication that Plaintiff served his Motion for Sanctions in a manner or within a time period that would have allowed Defendants to withdraw their Opposition to Plaintiff's Motion to Appear Telephonically or Motion for Summary Judgment.   In addition, though it states, "Defendants' arguments are not based on facts nor law," Plaintiff's Response to the Motion for Summary Judgment does not include the same arguments as are contained in the Motion for Sanctions.   *Compare* [#23] with [#26].   Based on the record, it appears that Defendants were only served with the Motion for Sanctions through its filing with the court, without regard to Rule 11's "safe harbor" provision.   *See Espinoza v. Am. Family Mut. Ins. Co.*, No. CIV.08-cv-00709-REB-MEH, 2008 WL 4538833, at *1 (D. Colo. Oct.

7, 2008) (denying the plaintiff's Rule 11(c) motion for attorney's fees because, *inter alia*, "[t]here [was] no evidence that this safe harbor was afforded defendants here"). And as a result, Defendants never had an opportunity withdraw or appropriately correct the various deficiencies alleged by Plaintiff in the Motion for Sanctions as contemplated by the safe harbor provision. Fed. R. Civ. P. 11(c)(2).

Even if this court were to consider the substantive application of Rule 11, it is disinclined to impose sanctions on Defendants based on these filings. First, while discourteous and misplaced, this court does not find Defendants' arguments with respect to the three filings at issue to be defamatory or particularly embarrassing. Second, with respect to Plaintiff's argument that the three filings multiplied litigation expenses, Rule 11(c)(5)(A) prohibits the court from imposing a monetary sanction on a represented party based on a violation of Rule 11(b)(2), i.e. "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Third, the Copyright Act allows for the recovery of reasonable attorney's fees and costs at the discretion of the court to the prevailing party. 17 U.S.C. § 505. This court finds that any forthcoming motion under this statute is a better, more comprehensive mechanism for considering any request for attorney's fees and costs for the entire case.

## CONCLUSION

For the foregoing reasons, this court respectfully **RECOMMENDS** that:

(1)     Statutory damages in the amount of $3,500 be **AWARDED** to Plaintiff Blaine Harrington III;

(2)     Plaintiff's Motion for Rule 11 Sanctions, and Points and Authorities in Support Thereof [#26] be **DENIED**; and

(3)     Plaintiff's Motion to Exclude Expert Testimony of Joshua T. Martin [#47] be

**GRANTED IN PART and DENIED IN PART**.[13]


DATED: April 25, 2019                          BY THE COURT:

                                               Nina Y. Wang
                                               United States Magistrate Judge


---

[13] Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).